IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JOSEPH YOUNG, et al., | } |
| | } |
|     Plaintiffs, | } |
| | }   CIVIL ACTION NO. |
| v. | } |
| | }   01-AR-1151-S |
| NEW PROCESS STEEL, L.P., | } |
| | } |
|     Defendant. | } |

**MEMORANDUM OPINION AND ORDER**

After August 9, 2005, the date upon which *Young v. New Process Steel, L.P.*, 419 F.3d 1201 (11th Cir. 2005), was handed down, the Eleventh Circuit withheld its mandate to this court while the Supreme Court considered the petition for a writ of *certiorari* that had been filed by defendant, New Process Steel, L.P., seeking a review of the Eleventh Circuit's adverse decision. After *certiorari* was denied, the Eleventh Circuit issued its mandate, calling upon this court in an exercise of the discretion provided by Rule 7, F.R.App. P., to determine whether or not the appeal by plaintiffs, Joseph Young, Darrell Sims, Mark Steven Greer and Morris Pickett, to the Eleventh Circuit is "frivolous", unreasonable or groundless". *Id*. At 1202. Only if this court finds that plaintiffs' appeal is one or more of these three things, can the court include within the bond to be posted by plaintiffs, the possible attorney's fee that will be incurred by defendant in defending the appeal, that is, in the event the appeal ultimately proves to have been frivolous. This is because

of the fee shifting concept contained in the combination of 42 U.S.C. § 1981 and 42 U.S.C. § 1988, under which plaintiffs, who were black employees of defendant, sued, alleging that defendant maintained a racially hostile work environment.  The jury found for defendant and against all four plaintiffs.

The Eleventh Circuit not only stayed its mandate, but held in abeyance its consideration of plaintiffs' appeal on its merits until the Supreme Court acted, and until this court decides defendant's request for fixing a Rule 7 bond after receiving the Eleventh Circuit's instructions on how to do so.  The Eleventh Circuit needs to know whether any Rule 7 bond will be required, and, if so, will it include defendant's anticipated appellate attorneys' fees.  It also needs to know whether plaintiffs will post such a bond, if required, or will appeal from an order that requires it.

On March 15, 2004, when this court earlier, if erroneously, imposed a Rule 7 bond on plaintiffs in the amount of $61,000, it decided that defendant's anticipated attorney's fee in defending the appeal will be approximately $60,000.  That Rule 7 order was vacated upon the Eleventh Circuit's finding that this court was in error in deciding that the **quality** of plaintiffs' appeal was irrelevant in the fixing of a Rule 7 bond in favor of a prospectively prevailing appellee when the applicable fee shifting statute included the potential fee as part of the court

costs.  Since March 15, 2004, when this court estimated what defendant's anticipated legal expense on appeal would be, defendant has undoubtedly overspent its appellate budget, because it fought the Rule 7 issue all the way to the Supreme Court in an effort to maintain what, until the recent denial of *certiorari*, it insisted was its right to a Rule 7 bond that included its anticipated attorneys' fees, all without any consideration by this court of whether plaintiffs' appeal is "frivolous, unreasonable or groundless".  Under the present circumstances, the court will not revisit the question of the **amount** of defendant's prospective appellate attorneys' fees.  Instead, the court, following the mandate, will visit for the first time the question of whether this appeal is frivolous, unreasonable or groundless.

While awaiting the Eleventh Circuit's mandate, this court was assigned another case that presented a Rule 7 issue.  In *Vickery v. Cavalier Home Builders, LLC*, 405 F. Supp. 2d 1352 (N.D. Ala. 2005), this court, acknowledging the lesson in *Young*, did not have to apply *Young* because there the party that invoked Rule 7 was operating under a fee shifting statute that did not include a prevailing party attorney's fee as part of the court costs.  The opposite is, of course, true in the instant case, in which 42 U.S.C. § 1988 provides for attorneys' fees, if a prevailing party is entitled to them, as part of the court costs.

3

In *Young*, which not only is precedent binding on this and all other district courts within the Eleventh Circuit, but that constitutes the law-of-the-case in this case, the Eleventh Circuit, as the first important proposition it states, holds that a lower court ruling on an appellee's Rule 7 request is reviewed for abuse of discretion and not *de novo*.  The Eleventh Circuit then analogizes the trial court's Rule 7 responsibility to its routinely called-for findings under 28 U.S.C. § § 2254 and 2255, which are statutes that require a certificate of appealability as a prerequisite to a plaintiff's right to appeal.  The Eleventh Circuit points out that the task under § § 2254 and 2255 is similar to the task to be performed in the instant case.  Both tasks "essentially involve evaluating a plaintiff's possibility of success on appeal based on what the court has seen of his case at the trial level".  418 F.3d at 1207.  This is in accord with what the Eleventh Circuit had earlier said on the same page of its opinion: "District courts...have a great deal of experience weighing the merits of potential appeals".  *Id*.  Based on this language, it makes sense for the trial court to limit itself when fixing a Rule 7 bond to what it saw and heard in the case before the notice of appeal was filed.  If a trial court mandated to evaluate the potential merits of an appeal should insist on studying the appellate briefs before deciding the "possibility of success on appeal", the court would be implicitly assuming the

prerogative of the reviewing court and would be a party to the creation of expense and effort that Rule 7 was designed to ameliorate.  There would be, in effect, a duplicate, preliminary appeal to the trial court.  For this reason, this court has not sought post-mandate participation by the parties.  The court need not decide whether the burden of proof is upon plaintiffs to prove that their appeal is not lacking in merit or the burden is upon defendant to prove that the appeal is lacking in merit.  The court takes upon itself the burden of conducting this inquiry pursuant to the mandate, using only what it has before it.

There is, of course, some difference between the evaluation of an original complaint for the possibility of its being so lacking in colorable merit as to be dismissed as "frivolous, unreasonable or groundless", and the evaluation of an appeal for its "likelihood of success".  This court does not remember everything that was said and done between the moment plaintiffs filed their original complaint in 2001 and the jury verdict and judgment in 2003, but this court does well remember that it allowed the case to be fully tried to a jury for three weeks after over two years of pretrial proceedings, including an unsuccessful attempt at mediation and a mistrial, and after the issues had been narrowed to one, namely, whether, under 42 U.S.C. § 1981 scrutiny, a hostile racial environment existed at defendant's manufacturing plant to the injury of plaintiffs.  The

fact that a jury decided this issue against all four employees after having heard days of testimony may not be dispositive of the question now before the court, but it does suggest to this court that plaintiffs' appeal was more a knee-jerk reaction to a stinging defeat than a deliberative decision.  Without having seen plaintiffs' actual points of appeal and accompanying arguments, and because of the conspicuous absence of a Rule 59, F.R.Civ.P., post-judgment motion by plaintiffs for a new trial, a motion that would have alerted the court as to what errors it had allegedly committed, this court must engage in intelligent guessing as to what those points might be, and then to evaluate their possibility of success.  Frankly, the court can think of no arguable error that could reasonably form a basis for challenging the jury result here.  If the court had granted plaintiffs' oral motion for a judgment of liability under Rule 50, F.R.Civ.P., and had given the case to the jury only for its assessment of damages, defendant would now be the appellant and would have a meritorious appeal.  The court's failure to grant defendant's Rule 50 motion would have created an excellent point for an appeal by defendant, that is, if its said motion had not been mooted by the jury verdict.

In *Vickery*, *supra*, the frivolous nature of the appeal was abundantly obvious.  Although not as clear in this case as it was in *Vickery*, the court, after reviewing the record, finds that

6

plaintiffs' appeal is "unreasonable", if not totally "frivolous" and/or "groundless", giving these alternative terms their generally understood meanings.  This being so, the court ORDERS plaintiffs **within fourteen (14) days** to post a bond pursuant to Rule 7, F.R.App.P., in the amount of $61,000 ($1,000 in routinely taxable costs and $60,000 in anticipated attorneys' fees) in a form and with a corporate surety to be approved by the Clerk.  In reaching the conclusion that plaintiffs' appeal was poorly conceived, the court has not considered the possibility that the appeal was motivated, in whole or in part, by the pendency of unruled upon motions for sanctions against plaintiffs.  If the bond is not posted, defendant will be authorized to move in the Eleventh Circuit for a dismissal of the appeal.

If plaintiffs take an appeal from this order, and the Eleventh Circuit is thus called upon to decide whether this court has abused its Rule 7 discretion, the Eleventh Circuit will, of course, have before it the parties' briefs on the merits of the appeal, items this court does not have.  This court knows that the Eleventh Circuit will distinguish the merits of plaintiffs' appeal on the merits from an evaluation of the exercise of this court's Rule 7 discretion.

DONE this 30th day of March, 2006.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE